**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| SEOUL TACO HOLDINGS, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 4:20-CV-1249 RLW |
| v. | ) ) ) | |
| THE CINCINNATI INSURANCE CO., et al. | ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants The Cincinnati Insurance Company, The Cincinnati Casualty Company, The Cincinnati Indemnity Company and Cincinnati Financial Corporation's Motion to Dismiss Case  (ECF No. 15) and Defendant City of St. Louis and Fredrick Echols' Motion to Dismiss (ECF No. 26). These matters are fully briefed and ready for disposition.

**LEGAL STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007)).  A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

**BACKGROUND**

Plaintiffs Seoul Taco Holdings LLC, Seoul Taco LLC, Seoul Taco STL LLC, Seoul Taco Chesterfield LLC, Seoul Taco Columbia LLC, Seoul Taco Chicago LLC, Seoul Taco Hyde Park LLC, Seoul Taco Naperville LLC, and Seoul Taco Food Trucks LLC (collectively referred to as "Plaintiffs") are a group of restaurants incorporated in Missouri and operating under the brand "Seoul Taco." Plaintiffs have operations in St. Louis County, Missouri; St. Louis City, Missouri; Columbia, Missouri; and several locations in Chicago, Illinois. (Petition ("Pet."), ECF No. 9, ¶¶5-6). Defendants The Cincinnati Insurance Company, The Cincinnati Casualty Company, The Cincinnati Indemnity Company, and Cincinnati Financial Corporation (collectively, "The Cincinnati Insurance Defendants") are an insurance conglomerate headquartered in Fairfield, Ohio. (Pet., ¶7). Defendant City of St. Louis is a city in the state of Missouri, and Defendant Frederick Echols, M.D., is the Director for the St. Louis City Department of Health. (Pet., ¶¶8-9). The Court refers to Defendant City of St. Louis and Dr. Echols as "the St. Louis City Defendants."

Plaintiffs bring this action under the Missouri Declaratory Judgment Act, §527.010, R.S.Mo., asking the Court to find that The Cincinnati Insurance Defendants are obligated to pay Plaintiffs for lost business income and extra expenses incurred due to the forced suspension of operations at Plaintiffs' restaurants. (Pet., ¶¶1-2). Plaintiffs claim loss based upon the forced suspension of operations when the City of St. Louis, Missouri, St. Louis County, Missouri, Boone County, Missouri, Columbia, Missouri, the State of Illinois, and other government officials issued shut down orders ("shutdown orders") for various businesses. including restaurants, to slow and/or prevent the spread of the coronavirus ("COVID-19"). (Pet., ¶1).

On September 14, 2020, The Cincinnati Insurance Defendants removed this action to federal court, contending complete diversity of citizenship exists between Plaintiffs Seoul Taco Holdings LLC, Seoul Taco LLC, Seoul Taco STL LLC, Seoul Taco Chesterfield LLC, Seoul Taco Naperville LLC, and Seoul Taco Food Trucks LLC and Defendants The Cincinnati Insurance Company, The Cincinnati Indemnity Company, and Cincinnati Financial Corporation. (Notice of Removal, ECF No. 1, ¶17; 28 U.S.C. §1332).  The Cincinnati Insurance Defendants further asserted that the amount in controversy exceeds $75,000.  (Notice of Removal, ¶¶18-23).

On December 16, 2020, the Court found that the St. Louis City Defendants were nominal defendants and denied Plaintiffs' Motion to Remand.  *See* ECF No. 33.  The Court ordered the parties to complete briefing the pending Motions to Dismiss.  The Court now grants those Motions to Dismiss.

## DISCUSSION

### I. City of St. Louis and Dr. Echol's Motion to Dismiss

The Court finds there is no controversy involving the St. Louis City Defendants. Plaintiffs allege that the St. Louis City Defendants issued orders in March 2020 prohibiting on-premises dining.  (Pet., ¶20).  The shutdown orders referenced in the Petition expired around the time this case was filed and were replaced with superseding orders allowing on-premises dining. *See* ECF No. 20-1; https://www.stlouis-mo.gov/government/departments/health/communicable-disease/covid-19/documents/upload/FINAL-ORDER-NO-8.pdf and https://www.stlouis-mo.gov/government/departments/health/communicable-disease/covid-19/documents/upload/Phase-1-Reopening-Exhibit-F.pdf (last visited on December 9, 2020).[1]

---

[1] The most recent emergency order was issued on April 30, 2021, and requires "[a]ll public accommodations, large venues, event spaces and spaces where people gather [to] limit their

Plaintiffs do not seek any relief from the St. Louis City Defendants, nor have Plaintiffs requested that this Court interpret the St. Louis City shutdown orders. Indeed, even though Plaintiffs' restaurants located outside of the St. Louis City are named as Plaintiffs, Plaintiffs do not name as Defendants the government authorities responsible for other shutdown orders in their Petition, other than the St. Louis City Defendants.

In response, Plaintiffs argue that the St. Louis City Defendants are necessary parties. Plaintiffs contend that because "the resolution of this dispute turns, in part, on the Court's interpretation of the shutdown orders issued by the St. Louis City Defendants, they have an interest that could be affected by the declaratory relief that Plaintiffs seek." (ECF No. 37). Plaintiffs further contend that they joined St. Louis City as the only municipal defendant because this case originated in the Circuit Court for the City of St. Louis, which precluded joinder of out-of-county government authorities. (ECF No. 37 (citing Mo. Rev. Stat. §508.060)).

Plaintiffs' lawsuit does not involve an interpretation of the shutdown orders. Plaintiffs allege that the shutdown orders forbade "all in-premises access to Seoul Taco restaurants to the general public." (Pet., ¶19). Plaintiffs specifically identify the "actual controversy" in this case: "Plaintiffs contend, and Cincinnati Insurance disputes that: (1) the shutdown orders described above constitute a forced suspension of operations and prohibition of access to the Insured Premises; (2) the shutdown orders and uncontrolled spread of the COVID-19 Virus in the community triggers coverage because the Policy does not exclude damages caused by viral pandemics, and actually extends coverage for such loss or damage under the business suspension

---

capacity … to no more than the number of individuals who can remain socially distant in the space or less" and requires them to close no later than 3:00 a.m. https://www.stlouis-mo.gov/government/departments/health/communicable-disease/covid-19/orders/health-commissioner-order-17.cfm (last visited May 3, 2021).

and civil authority provisions of the Policy; and (3) Cincinnati Insurance is obligated to pay the full and actual amount of Plaintiffs' loss of business income and extra expenses incurred during the periods of coverage under the Policy." (Pet., ¶36). Plaintiffs have not alleged that any of these orders, including the St. Louis City shutdown orders, exceeded the government's authority or were improperly or unconstitutionally enacted. (Pet., ¶¶19-26). Rather, the only issue in this case is whether these losses and damages as a result of these shutdown orders constitute a covered loss under Plaintiffs' policy with The Cincinnati Insurance Defendants. (Pet., ¶¶27-38). Thus, even under their own interpretation of their Petition, Plaintiffs are not alleging that the shutdown orders were ambiguous or that the St. Louis City Defendants can elucidate the meaning or implications of those orders for Plaintiffs' restaurants. Rather, all parties agree that the issue is whether the forced shutdown of Plaintiffs' restaurants triggers relief under Plaintiffs' Policy with the Cincinnati Insurance Defendants. The Court grants the Motion to Dismiss of the St. Louis City Defendants, finding they have "no real connection with the controversy." *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (citing *Chesapeake & Ohio Ry. Co. v. Cockrell,* 232 U.S. 146, 152 (1914)). Thus, no cause of action exists against the St. Louis City Defendants on the face of Plaintiffs' Petition. *See Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983) ("Fraudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant." ). For the foregoing reasons, the Court grants the Motion to Dismiss and dismisses the St. Louis City Defendants.

 II. **The Cincinnati Defendants**

On June 19, 2019, Plaintiffs entered into a contract of insurance with the Cincinnati Insurance Company, Policy Number ECP 054 21 28 (hereinafter, "the Policy"), for the policy

period of June 19, 2019 to June 19, 2022.  (Pet., ¶10; Policy, p. 13).[2]  Plaintiffs seek recovery under the Policy.[3]

Defendants argue that the Policy requires "direct physical loss" for coverage under the Policy.  Defendants identify the "direct physical loss" requirement in multiple places.  For Business Income coverage, the Policy provides:

> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The suspension must be caused by direct "loss" to the property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown on the Declarations.  The "loss" must be caused by or result from a Covered Cause of Loss.

(Policy, pp. 60 & 115).  Covered Cause of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part."  (Policy, pp. 47 & 116).  "Loss" is defined, in relevant part, as "accidental physical loss or accidental physical damage."  *See* Policy, pp. 80 & 123; *see also* ECF No. 36 at 2 (Plaintiffs note that the Policy requires "physical loss" or "physical damage").  Therefore, Defendants argue that there is no Business Income coverage unless Plaintiffs establish there is direct physical loss to the covered property.  Defendants emphasize that a Covered Cause of Loss, and consequently direct physical loss, is an express requirement for coverage under the Policy, including the Extra Expense and Civil Authority coverages.  *See* Policy, pp. 61 & 115-116  (Extra Expense); pp. 61-116 (Civil Authority).  Civil Authority coverage also requires direct physical loss to property other than the insured's property

---

[2] Plaintiffs entered into an insurance contract only with The Cincinnati Insurance Company. Defendants contend that the remaining Cincinnati entities are separate entities with no relationship with Plaintiffs.  (ECF No. 16, p. 2, n.2).

[3] Policy forms relevant to this lawsuit are form FM 101 05 16 (Building and Personal Property Coverage Form) and form FA 213 05 16 (Business Income (and Extra Expense Coverage Form). *See*, *e.g.*, Policy, pp. 43-82 & 115-123.

and prohibition of access to the insured's property as a result of that direct physical loss. *See* Policy, pp. 58 & 133.

Plaintiffs contend they suffered a covered loss under the Policy. Plaintiffs argue that the COVID-19 virus is a "physical substance" that "contaminates physical surfaces…" (ECF No. 36 at 3-4 (citing Pet., ¶1). Plaintiffs allege that the virus contaminated the Insured Premises at issue in this case. (ECF No. 36 at 4 (citing Pet., ¶¶18, 27). Plaintiffs further allege that the contamination of the virus forced them to suspend their operations, triggering coverage for lost business income and extra expenses under the Policy. (Pet., ¶28). Plaintiffs contend that, because of the uncontrolled spread of COVID-19, government authorities issued shutdown orders forbidding onsite dining at the Insured Premises. (Pet., ¶¶19-26). Plaintiffs' Petition further alleges the losses suffered by the shutdown orders are covered under the Civil Authority provision of the Policy. (Pet., ¶29). Specifically, Plaintiffs contend their losses are covered under the Civil Authority provision of the Policy because (2) the COVID-19 Virus has caused damage to multiple properties other than the Insured Premises, (2) orders of a civil authority— i.e., the shutdown orders—have prohibited access to the Insured Premises, (3) these orders also prohibit access to the areas surrounding the damaged third-party properties due to the damage, and (4) the action of the civil authority is in response to dangerous physical conditions resulting from the uncontrolled spread of the COVID-19 Virus. (Pet., ¶29).

The parties agree Missouri state law applies in this diversity action. *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 883 (8th Cir. 2014). This Court is "bound by the decisions of the Supreme Court of Missouri." *Id.*; *see also J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007) (because this case is based on diversity jurisdiction, "state law controls the construction of [the] insurance policies[.]" If the Supreme Court of

Missouri has not addressed an issue, the Court must predict how the court would rule, and follow decisions from the intermediate state courts when they are the best evidence of Missouri law. *Id.*

Under Missouri law, the interpretation of an insurance policy is a question of law. *Schmitz v. Great Am. Assurance Co.*, 337 S.W.3d 700, 705 (Mo. banc 2011); *Zwillo V, Corp. v. Lexington Ins. Co.*, No. 4:20-00339-CV-RK, 2020 WL 7137110, at *2 (W.D. Mo. Dec. 2, 2020); *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867, 872 (W.D. Mo. 2020). "Missouri courts read insurance contracts 'as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written.'" *Lafollette v. Liberty Mut. Fire Ins. Co.*, 139 F. Supp. 3d 1017, 1021 (W.D. Mo. 2015) (quoting *Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 840 (Mo. App. W.D. 2011)). "Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.*, 54 S.W.3d 661, 667 (Mo. App. E.D. 2001). "To determine the intent of the parties, the language in the contract is to be read according to its plain and ordinary meaning." *Lafollette v. Liberty Mut. Fire Ins. Co.*, 139 F. Supp. 3d 1017, 1021 (W.D. Mo. 2015) (citing *Mendota Ins. Co. v. Lawson,* 456 S.W.3d 898, 903 (Mo. Ct. App. 2015). "If an ambiguity exists the policy language will be construed against the insurer." *Lafollette*, 139 F. Supp. 3d at 1021 (citing *Mendota*, 456 S.W. 3d at 904).[4] "Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." *Cincinnati Ins. Co.*, 54 S.W.3d at 667.

---

[4] Neither party cites to any dispositive decisions from the Eighth Circuit. Both sides cite to cases identifying general statements of contract interpretation under Missouri law. The Court is aware of one potentially dispositive case currently before the Eighth Circuit awaiting a decision, *Oral Surgeons PC v. The Cincinnati Insurance Co.*, case number 20-3211.

Plaintiffs rely primarily upon the District Court decision in *Studio 417, Inc. v. Cincinnati Ins. Co.*, which held that the plaintiffs adequately alleged a direct physical loss based upon shutdown orders in Missouri and Kansas to prevent the spread of COVID-19. 478 F. Supp. 3d 794, 800 (W.D. Mo. 2020). Applying Missouri law, the *Studio 417* Court held that plaintiffs sufficiently alleged

> a causal relationship between COVID-19 and their alleged losses. Plaintiffs further allege that COVID-19 "is a physical substance," that it "live[s] on" and is "active on inert physical surfaces," and is also "emitted into the air." (Doc. #16, ¶¶ 47, 49-60.) COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it "unsafe and unusable, resulting in direct physical loss to the premises and property." (Doc. #16, ¶ 58.) Based on these allegations, the Amended Complaint plausibly alleges a "direct physical loss" based on "the plain and ordinary meaning of the phrase." *Vogt*, 963 F.3d at 763.

*Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 800 (W.D. Mo. 2020); *see also Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867, 874 (W.D. Mo. 2020) (holding the plaintiffs adequately stated a claim for a direct physical loss where the plaintiffs "allege[d] that COVID-19 physically attached itself to their dental clinics, thereby depriving them of the possession and use of those insured properties").

Likewise, the *Studio 417* Court held that the plaintiffs stated a claim for coverage under the Civil Authority provision:

> Plaintiffs adequately allege that they suffered a physical loss, and such loss is applicable to other property. Additionally, Plaintiffs allege that civil authorities issued closure and stay at home orders throughout Missouri and Kansas, which includes property other than Plaintiffs' premises.

*Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 803 (W.D. Mo. 2020); *see also Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867, 879 (W.D. Mo. 2020) ("The allegations put forth by Plaintiffs sufficiently establish access to the clinics was prohibited to such a degree that the Civil Authority provision could be invoked.").

Other Missouri district court cases, and the majority of the other district courts across the country, however, have found that insurance coverage is not available under the terms of the Policy or similar policies. In *Zwillo V, Corp. v. Lexington Ins. Co.,* the District Court "agree[d] with Defendant that 'direct physical loss of or damage to property' requires physical alteration of property, or, put another way, a tangible impact that physically alters property." 2020 WL 7137110, at *4. The *Zwillo* Court relied on several other district courts' determinations that damage from the possible or actual presence of a virus or loss of use due to a stay-at-home order because of the virus does not constitute "direct physical loss of or damage to" property. 2020 WL 7137110, at *5. The *Zwillo* Court ultimately held that "[w]hether the complaint is couched in terms of COVID-19's presence on the premises or of loss of use of premises due to the stay-at-home orders (or the virus itself), Plaintiff has failed to state a claim upon which relief may be granted because the policy does not cover the alleged claim." *Zwillo V, Corp. v. Lexington Ins. Co.*, No. 4:20-00339-CV-RK, 2020 WL 7137110, at *6 (W.D. Mo. Dec. 2, 2020); *see also Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, No. 4-20-CV-222-CRW-SBJ, 2020 WL 5820552, at *1 (S.D. Iowa Sept. 29, 2020) ("OSPC does not allege any such "physical" or "accidental" loss, but instead contends its loss was caused by the COVID-19 coronavirus and the government actions to suspend temporarily non-emergency dental procedures. Recent Cases cited by Cincinnati have held that virus-related closures of business do not amount to direct loss to property covered by the Cincinnati policy of insurance.") (same policy language as in this case); *Bend Hotel Dev. Co., LLC v. Cincinnati Ins. Co.*, No. 20 C 4636, 2021 WL 271294, at *3 (N.D. Ill. Jan. 27, 2021) ("even if plaintiff had alleged the presence of the coronavirus on the premises, every court in this district that has interpreted similar provisions under Illinois law has concluded that the virus does not cause 'direct physical loss or damage' to property").

As stated, Plaintiffs concede that the Policy requires a "physical loss" to recover under their Policy with Defendants. (ECF No. 36 at 1-3 (citing Policy, p. 80)). Plaintiffs maintain that COVID-19 is a physical substance that contaminated Plaintiffs' restaurants "causing a loss of use of that property [that] constitutes a direct physical loss under the policy." (ECF No. 36 at 6). The Court holds, however, Plaintiffs' interpretation would remove the "physical" requirement for a covered loss. This Court holds that Plaintiffs' "loss of use" of the property is insufficient. "The Court agrees with the courts that have found that loss of use of property without any physical change to that property cannot constitute direct physical loss or damage to the property." *T & E Chicago LLC v. Cincinnati Ins. Co.*, No. 20 C 4001, 2020 WL 6801845, at *5 (N.D. Ill. Nov. 19, 2020). The Policy's "use of 'loss to' versus 'loss of' phrasing supports this conclusion." *T & E Chicago LLC*, 2020 WL 6801845, at *5; *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, No. 20-CV-2211-JAR-GEB, 2020 WL 7078735, at *7 (D. Kan. Dec. 3, 2020) ("The presence of the words 'direct' and 'physical' limit the words 'loss' and 'damage' and unambiguously require that the loss be directly tied to a material alteration to the property itself, or an intrusion onto the insured property."). Similarly, Plaintiffs' allegation that the COVID-19 virus was on the premises or that there was a person with COVID-19 on the premises is insufficient to support a claim of physical loss or damage under the Policy. This Court agrees that "even assuming that the virus physically attached to covered property, it did not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated." *Promotional Headwear Int'l*, 2020 WL 7078735, at *8. That is, "routine cleaning and disinfecting can eliminate the virus on surfaces." *Id*. As a result, the Court holds that

Plaintiffs fail to allege a coverable physical loss under the Policy and the Court grants Defendants' Motion to Dismiss.[5]

Accordingly,

**IT IS HEREBY ORDERED** that The Cincinnati Insurance Company, The Cincinnati Casualty Company, The Cincinnati Indemnity Company and Cincinnati Financial Corporation's Motion to Dismiss (ECF No. 15) and Defendants City of St. Louis and Fredrick Echols' Motion to Dismiss (ECF No. 26) are **GRANTED**.  Plaintiffs' claims are **DISMISSED** with prejudice.

An appropriate Order of Dismissal is filed herewith.

Dated this 11th day of May, 2021.

*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

---

[5] Since the business suspension and civil authority provisions both require direct physical loss to property, all of Plaintiffs claims under the Policy are dismissed.